UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO

| | |
|---|---|
| CAROLINA CASUALTY INSURANCE COMPANY, ) ) ) | |
| Plaintiff, ) ) | Case No.: 10-cv-02492-BYP |
| vs. ) ) | Judge Benita Y. Pearson |
| GALLAGHER SHARP; ROBERT EDDY; and ALTON STEPHENS, ) ) ) ) | |
| Defendants. ) ) | |

**CAROLINA CASUALTY'S RESPONSE
TO DEFENDANTS' MOTION TO DISMISS**

Carolina Casualty Insurance Company ("Carolina Casualty") submits this Response to Defendants' Motion to Dismiss Carolina Casualty's Complaint.

### I.  INTRODUCTION

In this legal malpractice action, Carolina Casualty seeks damages arising out of the defendants' negligent negotiation and drafting of a "high/low" settlement agreement entered into prior to trial in a legal malpractice action in which Gallagher Sharp defended Carolina Casualty's insured, Goodman Weiss Miller LLP (the "Goodman Firm").  In a subsequent declaratory judgment filed by the Goodman Firm to enforce the "high/low" agreement, the court described the agreement as "very inartfully written."[1]  After the jury rendered a verdict in favor of the malpractice claimants and the verdict was affirmed in the Court of Appeals, it became necessary for the Goodman Firm and Carolina Casualty to enter into a much less favorable second "high/low agreement."

---

[1] The terms of the high/low agreement are contained in a Memorandum of Understanding and Confidential Partial Settlement Agreement" ("high/low" settlement agreement), which the defendants have filed under seal. *See* D.E. 10.

In support of their motion to dismiss, the defendants advance two primary arguments: (1) that Carolina Casualty lacks standing to bring a legal malpractice action; and (2) that the action is barred by the running of the statute of limitations. Neither of these arguments has merit. Carolina Casualty has standing to sue Gallagher Sharp because Gallagher Sharp had an attorney-client relationship with Carolina Casualty and Carolina Casualty was in privity with the Goodman Firm. This action is not time-barred because the managing partner of Gallagher Sharp signed a tolling agreement in which Gallagher Sharp agreed that all statutes of limitations and time-based defenses were tolled as to all "attorneys" and "partners" of Gallagher Sharp. Accordingly, Carolina Casualty is entitled to pursue disposition of the instant action on the merits.

## II. STATEMENT OF FACTS

Carolina Casualty retained Gallagher Sharp and its attorneys to defend the Goodman Firm in a legal malpractice action brought by Environmental Network Corporation and Environmental Network and Management Corporation ("ENC"). *Complaint*, ¶ 8. Shortly before trial in September 2005, Gallagher Sharp attorneys Robert Eddy and Alton Stephens participated in the drafting and negotiation of a "high/low" settlement agreement with ENC. *Complaint*, ¶¶ 9-10. The agreement recited that Carolina Casualty agreed to pay up to a certain amount if ENC prevailed, and a minimum amount if the jury found for the Goodman Firm. *See* D.E. 10.

On October 3, 2005, the jury returned a verdict of $2,419,616.81, against the Goodman Firm. *Complaint*, ¶ 11. Thereafter, ENC contended that the "high/low" agreement was invalid. *Id.* On June 30, 2006, the Goodman Firm filed a complaint in Hamilton County Court of Common Pleas ("Declaratory Judgment Action") for a declaration of the enforceability of the

"high/low" agreement, and that ENC's recovery was limited to the remaining policy limit of the Carolina Casualty policy.[2] *Complaint*, ¶¶ 12-13.

On December 20, 2006, the court in the Declaratory Judgment Action granted summary judgment to ENC, finding that the "high/low" agreement did not constitute a valid and binding settlement. *Complaint*, ¶ 14. In its memorandum decision, the court characterized the "high/low" agreement as being "very inartfully written." *Complaint*, ¶ 15.

On March 1, 2007, the Court of Appeals, Eight Appellate District, affirmed the jury verdict in the ENC malpractice action. *Environmental Network Corp. v. Goodman Weiss Miller, LLP*, 2007 Ohio App. LEXIS 760. On August 24, 2007, ENC, Goodman and Carolina Casualty entered into a new "high/low" agreement. *Complaint*, ¶ 17. Of necessity, given the unfavorable circumstances that then existed, the "low" of the second agreement was many times higher than the "low" of the original "high/low" agreement negotiated prior to trial. *Complaint*, ¶ 19.

On August 29, 2007, the Ohio Supreme Court granted review of the Court of Appeals' decision in the ENC malpractice action. *Environmental Network Corp. v. Goodman Weiss Miller, LLP*, 114 Ohio St.3d 1506 (2007). Gallagher Sharp continued to act as co-counsel for the Goodman Firm throughout the appeal. *Defs.' Mem.*, p. 2; *see also Environmental Network Corp. v. Goodman Weiss Miller, LLP*, 119 Ohio St.3d 209, (2008). In an opinion issued on August 6, 2008, the Ohio Supreme Court reversed the judgment of the Court of Appeals and remanded the ENC malpractice action for entry of final judgment in favor of the Goodman Firm. *Id.* Carolina Casualty then paid the "low" amount that the parties agreed to in the second "high/low" agreement to ENC. *Complaint*, ¶ 19.

---

[2] Defense costs were within the policy limit.

On December 20, 2007, Gallagher Sharp, Carolina Casualty and Miller Goler Faeges LLP (formerly known as Goodman Weiss Miller LLP) entered into a Confidential Tolling Agreement, pursuant to which the statute of limitations and all other time-related defenses were tolled as to Gallagher Sharp and its "partners" and "attorneys." *Complaint*, ¶ 27. The Confidential Tolling Agreement was signed by Alan Petrov, Managing Partner of Gallagher Sharp. *See* D.E. 11.

In this action, Carolina Casualty alleges that the defendants breached their duty of care to Goodman and Carolina Casualty by negligently failing to negotiate and prepare a valid and binding "high/low" agreement prior to trial of the ENC malpractice action. *Complaint*, ¶ 24. Carolina Casualty alleges that Gallagher Sharp is vicariously liable for the negligence of its partners, Eddy and Stephens. *Complaint*, ¶ 25. Carolina Casualty seeks damages flowing from the invalidty of the September 2005 "high/low" agreement.

### III.     ARGUMENT

#### A.     Carolina Casualty Has Standing To Bring this Action

Defendants argue that Carolina Casualty lacks standing to bring this action because no attorney-client relationship existed between the Gallagher Sharp attorneys and Carolina Casualty In the alternative, defendants argue that Carolina Casualty lacks standing because there was no privity between the Goodman Firm and Carolina Casualty. Defendants are wrong on both counts.

#### 1.     Defendants had an Attorney-Client Relationship with Carolina Casualty

Carolina Casualty retained Gallagher Sharp and its attorneys to defend the Goodman Firm, Carolina Casualty's insured, in the ENC malpractice action. The Ohio Supreme Court has not addressed whether there may be an attorney-client relationship between an insurer and

defense counsel retained by the insurer. Ohio appellate courts, however, have held that due to this unique tripartite relationship, both the insured and the insurer are clients of defense counsel. *See USF&G v. Pietrykowski*, 2000 Ohio App. LEXIS 460 (2000). In *Pietrykowski,* the court cited the general rule that "[i]nsurance defense counsel routinely and necessarily represent the interests of both the insurer and the insured." *Id*. at *7. The court noted that "[t]he fact that retained counsel owes ethical and legal priority duties to the insured does not denigrate the parallel fact that retained counsel engaged by the insurer also represents USF&G." *Pietrykowsk*, 2000 Ohio App. LEXIS 460, *9.

In *Netzley v. Nationwide Mut. Ins. Co*., 34 Ohio App.2d 65 (1971), the court reached the same conclusion:

> We hold that both Nationwide as well as Mr. Netzley, its insured, were clients of the legal counsel retained by Nationwide. Further, we hold that both clients had a mutuality of interest in all of the affairs related to such cause of action, and both were equally entitled to any and all information, analysis, aid, or advice relating to such matter.

34 Ohio App.2d at 79; *see also Thornton v. Personal Service Ins. Co.,* 1975 Ohio App. LEXIS 7114, *20 (1975) ("Where the insurance company has the duty to defend its insured, the attorney so employed has two clients . . . .").

Courts in a majority of other jurisdictions have supported an insurer's right to maintain a legal malpractice action against defense counsel for breach of duty to the insurer. *See, e.g., Home Indem. Co. v. Lane Powell Moss & Mille*r, 43 F.3d 1322, 1330-31 (9th Cir. 1995) (finding attorney-client relationship between insurer and law firm retained to represent insured); *Paradigm Ins. Co. v. Langerman Law Offices, P.A*., 24 P.3d 593, 598 (Ariz. 2001) (attorney-client relationship can form between liability insurer and retained counsel even without mutual consent among the parties); *Unigard Ins. Group v. O'Flaherty & Belgum*, 38 Cal.App.4th

1229, 1235 (1995) (court finds that when "an insurer hires and compensates counsel to defend an insured, *provided that the interests of the insurer and insured are not in conflict*, the retained attorney owes a duty of care to the insurer which will support its independent right to bring a legal malpractice action against the attorney for negligent acts committed in the representation of the insured." (Emphasis in original); *see also Restatement (Third) of the Law Governing Lawyers*, § 51 cmt. g (2000).

### 2. Carolina Casualty was in Privity With the Goodman Firm

Defendants acknowledge that under Ohio law, attorneys may be liable to a third party who is in privity with the client for whom the legal services were performed. In the context of a legal malpractice action, "privity between a third person and the client exists where the client and the third person share a mutual or successive right of property or other interest." *Swiss Reinsur. America Corp. v. Roetzel & Andress*, 163 Ohio App.3d 336, 345 (2005), quoting *Sayyah v. Cutrell*, 143 Ohio App.3d 202, 112-112 (2001. Therefore, if the Goodman Firm and Carolina Casualty shared mutual interests with respect to the legal services at issue in this case, Carolina Casualty was in privity with the Goodman Firm.

Curiously, defendants cite to *Roetzel* to support their argument that Carolina Casualty was not in privity with the Goodman Firm. Such reliance is misplaced, however. In *Roetzel*, the court concluded that Frontier Insurance Co. lacked standing to bring a malpractice action against defense counsel it retained because there was a clear conflict of interests between the insurer and the insured throughout the case. *Roetzel*, 163 Ohio App.3d at 342-349. From the onset of the underlying action, the insured, as well as defense counsel, repeatedly urged the insurer to settle the matter within limits**.** *Id***.** at 339. On the other hand, Frontier, despite the recommendations of every party involved, adamantly maintained that the case should be tried – a disagreement that

persisted throughout the case.  *Id.* at 339-340.  Frontier further repeatedly declined to make a settlement offer and admitted that there was a conflict between it and the insured.  *Id.* at 344.  Ultimately, the insured hired separate counsel, who demanded that Frontier settle the case and threatened Frontier with a bad faith claim. *Id.* at 339.

Under these circumstances, the *Roetzel* court found "that the active conflict between the insured and insurer prevents a finding that Frontier was Treadon's client."  *Roetzel*, 163 Ohio App.3d at 345.  The court then addressed, and, for the following reasons, rejected Frontier's argument that it had standing because it was in privity with the insured:

> Frontier urges that both it and Dr. Robinson had a mutual interest in a proper defense from Treadon.  While these interests may have been in harmony at the inception of the case, as noted supra, the parties' interests diverged quickly.  Subsequent to Dr. Robinson April 1997 demand letter, the parties' interests were never mutually aligned.  Dr. Robinson urged settlement on the advice of Treadon, and Frontier repeated refused to engage in settlement negotiations. The record reflects that Dr. Robinson's interest was in having the matter settled within the policy limits to avoid personal exposure.  In contrast, Frontier's interest, as made clear by its handling of the case, was to minimize payout at the expense of Dr. Robinson's interests.  Accordingly, we cannot conclude that Frontier was in privity with Dr. Robinson in a manner that would permit frontier to bring a legal malpractice claim.

*Roetzel*, 163 Ohio App.3d, 336, 345-46.

Here, faced with the "clear conflict" requirement in *Roetzel*, defendants weakly argue that the interests of the Goodman Firm and Carolina Casualty were not sufficiently mutual because "[o]nly the Goodman Firm was a party to the ENC lawsuit, and only the Goodman Firm was subject  to a judgment against it." *Defs.'s Mem.*, p. 7.  Were that sufficient to bar a malpractice action by an insurer against counsel retained to defend an insured, no insurer could ever bring such an action, a conclusion no Ohio court has ever reached.

Defendants also note that they also asserted counterclaims against ENC, which, according to defendants, would only have benefited the Goodman Firm, and not Carolina

Casualty.  Defendants, however, do not contend that their pursuit of the counterclaims created a conflict of interests between Carolina Casualty and the Goodman Firm.  In order for Carolina Casualty to be in privity with the Goodman firm, it is unnecessary that all of their interests be identical, only that only that they shared a mutuality of interests and were not in conflict.  *See Roetzel*, 163 Ohio App.3d at 345-48.

In contrast to the "clear conflict" in *Roetzel*, there was no conflict whatsoever between the Goodman Firm and Carolina Casualty as to the September 2005 "high/low" agreement.  Carolina Casualty and the Goodman Firm were in total agreement concerning the terms of the "high/low" agreement, an agreement that would have fully protected the Goodman Firm from any exposure in excess of the policy limit.  Gallagher Sharp was also onboard, but inexplicably breached its duty to the Goodman Firm and Carolina Casualty to draft an enforceable "high/low" agreement.  The fact that Carolina Casualty did not sign the "high/low" agreement is irrelevant – the terms of the agreement reflected Carolina Casualty's agreement to pay certain amounts depending on certain results in the trial.  Without Carolina Casualty's agreement, the "high/low" agreement would have been meaningless from the outset.

In sum, with respect to the services that Gallagher Sharp provided (and negligently failed to provide) concerning the "high/low" settlement agreement, there was clear mutuality of interests between the Goodman Firm and Carolina Casualty.  Therefore, Carolina Casualty was in privity with the Goodman Firm and has standing to bring this action.

      **B.**      **Carolina Casualty's Action is Timely**

Defendants argue that Carolina Casualty action is time-barred because neither Robert Eddy nor Alton Stephens signed the tolling agreement referred to in the complaint.  *See* D.E. 11.

Significantly, and correctly, Defendants do not contend that the tolling agreement would otherwise not have effectively tolled the one-year statute for legal malpractice actions.

The tolling agreement was entered into on December 20, 2007. *See* D.E. 11. The defendants acknowledge that "the representation of the Goodman Firm ended in the summer of 2008" when the Ohio Supreme Court issued its decision on August 6, 2008." Gallagher Sharp continued to be among the attorneys for the Goodman Firm in the Court of Appeals and continued to act as attorney for the Goodman Firm when the final brief in the appeal in the Ohio Supreme Court was filed.[3] This is significant, as the one-year statute of limitations is tolled during the period that the attorney-client relationship continues to exist. *See Brown v. Wallace*, 1987 Ohio App. LEXIS 6033, *5 (12th Dist. 1987).

Additionally, while Gallagher Sharp was not counsel of record, it assisted Ross, Dixon & Bell in the Declaratory Judgment Action and billed Carolina Casualty for its services. Indeed, Gallagher Sharp continues to seek payment for fees for all of these services as a set-off to Carolina Casualty's claim in this case.

The introductory paragraph of the tolling agreement provides that the Agreement is entered into by Miller Goler Faeges LLP (formerly Goodman Weiss Miller LLP), Carolina Casualty, and Gallagher Sharp. The Agreement is signed by Carolina Casualty and Miller Goler, and, on behalf of Gallagher Sharp, "by Alan Petrov, Manager Partner." *See* D.E. 11. In Paragraph 5, the parties agree and acknowledge that the Agreement is "binding" on all "partners" and "attorneys" of any of the parties. *See* D.E. 11. The words "partners" and "attorneys" must be given effect, as under Ohio law, contracts must be interpreted in a way that renders all provisions

---

[3] Gallagher Sharp is listed as counsel for the Goodman Firm on its reply brief. *See* 2007 OH S. Ct. Briefs 739, 2008 OH S. Ct. Briefs LEXIS 93.

meaningful and not mere surplusage.  *See Lo-Med Prescription Services, Inc. v. Eliza Jennings Group*, 2007 Ohio App. Lexis 1970,*9 (2007).

Courts have held that when a tolling agreement is signed on behalf of a law firm, the agreement binds partners of the firm who are not referred to by name in the agreement and who did not personally sign the agreement.  *See MCC Proceeds, Inc. v. Whitman*, 1997 U.S. Dist. 7517 (S.D.N.Y. 1997), paragraph 12 of the tolling agreement at issue stated that "[t]he persons executing this Agreement on behalf of Whitman & Ransom represent that they are general partners and members of the Executive committee of Whitman & Ransom, that they have been duly authorized to execute this Agreement and that this Agreement is binding upon Whitman & Ransom and its partners."  The Agreement was signed by an "of counsel" attorney, and on behalf of Whitman & Ransom by two individuals identified as "General Partner, and Chairman of the Executive Committee," and "General Partner, Managing Partner and Member of the Executive Committee."

Under these circumstances, the court rejected the law firm's argument that the individual partners were not bound by the tolling agreement:

> Paragraph 12, which expressly includes W&R *and its partners*, shows the intent that the Tolling Agreement was to bind the individual partners.
>
> The signatories of the contract also provide no support for W&R's position that the individual partners were not bound by the Tolling Agreement. That Freedman signed the Tolling Agreement individually is understandable since the plaintiff's claims stem from his actions and is of no significance because at the time of execution Freedman was in "Of Counsel" status and not a partner of W&R. Although no W&R partners signed the Tolling Agreement in their capacity as individual partners, neither New York law nor general principles of partnership law require that an agreement to which a partnership is a party must either include the partners' individual signature or refer to the partners 'as Individual' for it to bind them as individuals."

*MCC Proceeds, Inc.*, 1997 U.S. Dist. LEXIS 7517, *5-6. (Emphasis in original)

In ruling against the W&R, the court distinguished the tolling agreement in *Resolution Trust Corp. v. Bonner,* 848 F.Supp. 96 (S.D. Tex. 1994), on which the trial court relied. In the *Resolution*, a tolling agreement signed on behalf of a law firm, SCW, and by one partner in the firm, provided as follows:

> SCW and Mr. Small for themselves and their successors, representatives, and assigns agree that . . . the running of the statute of limitations . . . shall be suspended . . . with respect to any claims or causes of action brought or to be brought by RTC arising out of or relating in any way to SCW's or Mr. Small's involvement with USA.

*Id.,* 848 F.Supp. at 98-99.

In finding that the tolling agreement was inapplicable to the other partners in the firm, the court noted that "if the individual partners were intended to be bound by the tolling contract, then the parties could easily have included a provision binding 'SCW and its partners.'" *Id.* at 99.

That is exactly what the parties did here. The Managing Partner of Gallagher Sharp signed the tolling agreement, and, as partners and attorneys of Gallagher Sharp are specifically referred to as being within the scope of the agreement, it is obvious that the intent of the parties was to toll the statute of limitations as to Gallagher Sharp and all of its attorneys. Therefore, the tolling agreement applies to all partners and attorneys of Gallagher Sharp, including Robert Eddy and Alton Stephens, and Carolina Casualty's action is not barred by the statute of limitations.

  **C. Gallagher Sharp May be Held Vicariously Liable for the Legal Malpractice of Eddy and Stephens**

Carolina Casualty seeks to hold Gallagher Sharp vicariously liable for the negligent acts and/or omissions of Robert Eddy and Alton Stephens, not liable for direct claims for legal malpractice. *Complaint,* ¶ 25. As the action against the individual defendants and Gallagher Sharp is timely, Gallagher Sharp may be held vicariously liable. *See National Union Fire Ins. Co. v. Wuerth*, 122 Ohio St. 3d 594, 598-600 (2000).

### D. Carolina Casualty has Stated a Claim for Legal Malpractice

Defendants suggest that Carolina Casualty has not properly brought a claim for legal malpractice.  This is not correct.  In Ohio, to state a cause of action for legal malpractice, a plaintiff must show:  (1) that the attorney owed a duty or obligation to the plaintiff; (2) that there was a breach of that duty or obligation and that the attorney failed to conform to the standard required by law; and, (3) that there is a causal connection between the conduct complained of and the resulting damage or loss. *Patere v. Petersen & Ibold*, 118 Ohio St.3d 503, 507 (2008). Carolina Casualty has alleged each of these elements. *See Complaint*, ¶¶ 20, 22-26.

Carolina Casualty has also alleged sufficient facts to support each of the requisite elements.  The Federal Rules of Civil Procedure "do not require a claimant to set out in detail the facts upon which he bases his claim."  *E.E.O.C. v. J.H. Routh Packing Co.*, 246 F.3d 850, 851 (6th Cir. 2001), quoting *Conley v. Gibson*, 355 U.S. 41, 47, 78 S.Ct. 99, 2 L.Ed.2d 80 (1957). "To the contrary, all the rules require is a 'short and plain statement of the claim' that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Id.* Carolina Casualty's complaint more than satisfies this low standard.  However, if the Court agrees with defendants' position that the complaint lacks sufficient facts, the appropriate remedy is not a dismissal with prejudice.  Instead, Carolina Casualty respectfully requests leave to file an amended complaint.

## **CONCLUSION**

For the reasons stated above, Carolina Casualty respectfully requests that the Court deny the defendants' motion to dismiss. Carolina Casualty is entitled to have this legal malpractice lawsuit be considered on the merits.

Respectfully Submitted,

Carolina Casualty Insurance Company

By: __s/ Adam D. Marshall_____
       One of their attorneys

Adam D. Marshall (Attorney Bar #: 0071424)
Lewis Brisbois Bisgaard & Smith, LLP
200 Las Olas Circle
200 S.W. 1st Avenue, Suite 910
Fort Lauderdale, FL 33301
(954) 728-1280
(954) 728-1282 (fax)
amarshall@lbbslaw.com