PEARSON, J.

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| CAROLINA CASUALTY INSURANCE CO., | ) | CASE NO. 1:10CV02492 |
| | ) | |
| Plaintiff, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | |
| | ) | |
| GALLAGHER SHARP, *et al.*, | ) | |
| | ) | **MEMORANDUM OF OPINION AND** |
| Defendants. | ) | **ORDER** (Resolving ECF No. 7) |

Defendants' Gallagher Sharp, Robert Eddy, and Alton Stephens seek dismissal of

Plaintiff Carolina Casualty Company's ("Carolina") complaint, pursuant to Rules 12(b)(1) and

(6) of the Federal Rules Of Civil Procedure.  ECF No. 7-1.

For the reasons provided below, the Court denies Defendants' motion to dismiss.

### I.  Factual and Procedural Background

Plaintiff Carolina brought this cause of action against the law firm of Gallagher Sharp and

two of the firm's attorneys, Robert Eddy and Alton Stephens, to recover damages resulting from

alleged legal malpractice.  The case before the Court has an intricate procedural history, as

described below.

Carolina is the liability insurance carrier for the law firm of Goodman, Weiss, Miller

L.L.P. ("Goodman").  ECF No. 1 at 2.  On December 9, 2002 in the Cuyahoga Court of Common

Pleas, *Environmental Network Corp., et al. v. Goodman Weiss Miller LLP*, Case No. CV-02-

488462, Environmental Network and Management Corporation ("ENC") sued Goodman alleging

legal malpractice.  ECF No. 1 at 2.  Carolina retained Gallagher Sharp to represent Goodman in

(1:10CV02492)

the 2002 ENC lawsuit.  ECF No. 1 at 2.

In the matter before the Court, Carolina is seeking damages from Gallagher Sharp resulting from the 2002 ENC lawsuit.  ECF No. 1.

**A.  2005 High Low Agreement**

During the early proceedings of the 2002 ENC lawsuit, Gallagher Sharp attorneys Eddy and Stephens negotiated a High Low Agreement.  ECF No. 1 at 2.  The agreement stipulated specific payments to be made by Carolina depending upon the outcome of the case.  ECF No. 10 at 1.  The "high" was the maximum amount Carolina would pay if judgment were entered in favor of ENC.  ECF No. 10 at 1.  The "low" were the minimum Carolina would pay if judgment was entered in favor of Goodman.[1]  ECF No. 10 at 1.

On October 3, 2005, a jury ruled against Goodman and in favor of ENC, resulting in $2,419,616.81 in damages to be paid to ENC by Carolina, as Goodman's liability carrier.  ECF No. 1 at 2.  After that ruling, ENC challenged the validity of the High Low Agreement.  ECF No. 1 at 2.  In June of the following year--2006, Goodman filed a lawsuit in the Hamilton County Court of Common Pleas seeking a declaratory judgment declaring that the High Low Agreement valid and enforceable.  ECF No. 1 at 2-3.  On December 20, 2006, the Hamilton County Court entered summary judgment in favor of ENC, invalidating the High Low Agreement.  ECF No. 1

---

[1] According to the 2005 high low agreement, if ENC prevailed, Carolina was to pay no more than the $3 million liability coverage amount minus the cost of litigation.  If Goodman prevailed, Carolina would pay $100,000.  ECF No. 10 at 1.

(1:10CV02492)

at 3.[2]

Shortly thereafter, in March of 2007, the Court of Appeals for the Eighth Appellate
District affirmed the judgment of the Cuyahoga County court.   ECF No. 1 at 3.

**B.  2007 High Low Agreement**

On or about August 24, 2007, ENC, Goodman, and Carolina entered into a second High
Low Agreement ("2007 High Low Agreement") subject to the condition that the Supreme Court
of Ohio would accept jurisdiction and hear the case.   ECF No. 9.  The 2007 High Low
Agreement had a higher "low" figure.[3]   ECF Nos. 9;10.

On August 6, 2008, the Supreme Court of Ohio reversed the judgment of the Court of
Appeals and remanded the ENC lawsuit for entry of final judgment in favor of Goodman.   ECF
No. 1 at 3.  Carolina then paid ENC, 1.75 million dollars, the low amount specified under the
terms of the 2007 High Low Agreement.   ECF No. 1 at 3.

**C.  The Tolling Agreement**

On or around December 20, 2007, prior to the Ohio Supreme Court issuing its ruling,
Gallagher Sharp, Goodman, and Carolina entered into a confidential tolling agreement that tolled
and preserved all time-related rights, liabilities and defenses relating to the lawsuits and
agreements mentioned above.   ECF No. 11 at 3.  The Tolling Agreement stated that each of the
parties "will not bring suit any action or proceedings to pursue the Rights from the Effective Date

---

[2]  The Hamilton County Court commented that the agreement had been "very inartfully
written."  ECF No. 1 at 3.

[3] The 2007 agreement provided that if Goodman prevailed, Carolina would have to pay
ENC $1.75 million as opposed to the 2005 low amount of $100,000.  ECF Nos. 9;10.

(1:10CV02492)

until sixty (60) days after Party provides written notice it has elected to terminate the stand still (the "Stand Still Period)."  ECF No. 11 at 2.  "Each of the Parties agrees that all statute of limitations and all other time based defenses . . . are tolled during the Stand Still Period."  ECF No. 11 at 2.

In the instant matter, alleging mutuality of interests and privity, Carolina has brought suit against Gallagher Sharp partners, Attorneys Eddy and Stephens, claiming that the Defendants breached their duty of care to Goodman and Carolina by (simply stated) their negligent drafting of the 2005 high low agreement.  ECF No. 1 at 5.  Gallagher Sharp, according to Carolina, is vicariously liable for the negligence of its partners Eddy and Stephens.  Carolina seeks damages arising from the difference between the payout amounts agreed upon in the two high low agreements, "along with attorneys fees costs associated with the Hamilton County lawsuit, attorneys fees and costs incurred in this action, and any and all other relief to which the plaintiffs may be entitled."  ECF No. 1 at 5.

All Defendants have moved the Court to dismiss the instant complaint alleging, pursuant to Rule 12(b)(1), that Carolina has no standing to bring this lawsuit, and, pursuant to 12(b)(6), that the action was filed after the one-year statute of limitations and, under Ohio Law, a law firm cannot commit legal malpractice.

## II.  Standards of Review

### A.  Civil Rule 12(b)(1)

"[A] motion to dismiss for lack of standing is properly analyzed under Rule 12(b)(1) since 'standing is thought of as a jurisdictional matter, and a plaintiff's lack of standing is said to

(1:10CV02492)

deprive a court of jurisdiction.'"  *Passa v. City of Columbus*, Case No. 2:03-CV-81 2006 WL

642492, at *3 (S.D. Ohio Mar. 9, 2006).

        A claim can be challenged under Rule 12(b)(1) both facially and factually.  *See Ohio*

*Nat'l Life Ins. Co. v. U.S.*, 922 F.2d 320, 325 (6th Cir.1990) (explaining that facial attacks on the

subject matter jurisdiction alleged by the complaint merely questions the sufficiency of the

pleading; whereas, factual attacks present facts which give rise to a factual controversy).   In a

facial challenge, such as this one, the defendant essentially contests the adequacy of the language

used on the pleading.  *O'Bryan v. Holy See*, 556 F.3d 361, 375-76 (6th Cir. 2009).  In such a

challenge, the approach mirrors the procedure and safeguards of Rule 12(b)(6).  *Ohio Nat'l Life*

*Ins. Co.*, 922 F.2d at 325 ("In reviewing such a facial attack, a trial court takes the allegations in

the complaint as true, which is a similar safeguard employed under 12(b)(6) motions to

dismiss.").  The Court will apply the Rule 12(b)(6) standard to Gallagher Sharp's challenge as to

whether Plaintiff Carolina has standing.

        **B.  Civil Rule 12(b)(6)**

        In deciding a motion to dismiss under Rule 12(b)(6), the Court must take all well-plead

allegations in the complaint as true and construe those allegations in a light most favorable to the

plaintiff.  *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (citations omitted).  "To survive a motion

to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim

to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (quoting

*Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  "While legal conclusions can

provide the framework of a complaint, the[] [well-pleaded factual allegations] must be supported

(1:10CV02492)

by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 129 S.Ct. at 1950.  Despite the overruling of *Conley v. Gibson*, 355 U.S. 41, 47 (1957), it remains that Fed. R. Civ. P. 8(a)(2), is intended to "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." Although this pleading standard does not require great detail, the factual allegations in the complaint "must be enough to raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 555.

"Although this is a liberal pleading standard, it requires more than the bare assertion of legal conclusions.  Rather, the complaint must contain either direct or inferential allegations respecting all the material elements to sustain a recovery under some viable legal theory." *First Am. Title Co. v. DeVaugh*, 480 F.3d 438, 444 (6th Cir. 2007) (quoting *Se. Tex. Inns, Inc. v. Prime Hospitality Corp.*, 462 F.3d 666, 671-72 (6th Cir. 2006)).  In other words, claims set forth in a complaint must be plausible, not just conceivable. *Twombly*, 550 U.S. at 570. "[W]here well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged–but it has not 'show[n]'–'that the pleader is entitled to relief.'" *Iqbal*, 129 U.S. at 1950 (citing Fed.R.Civ.P. 8(a)(2)).

To determine whether a claim should proceed, the Supreme Court has set forth a legal "plausibility standard" to assess whether the facts convincingly suggest actionable conduct, rather than merely describing conduct that actually occurred.  *Twombly*, 550 U.S. at 556 n.3; *see* RAKESH N. KILARU, *The New Rule 12(b)(6): Twombly, Iqbal, and the Paradox of Pleading*, 62 Stan. L. Rev. 905, 910-11 (2010).  Applying this standard, district court judges should weigh the

-6-

(1:10CV02492)

facts and determine, when necessary, whether they are sufficient to "nudge [the] claims across the line from conceivable to plausible" based on their "judicial experience and common sense." *Twombly*, 550 at 570; *Iqbal*, 129 S. Ct. at 1950.  A suit may proceed as long as plaintiff's complaint crosses that threshold.  *Twombly*, 550 at 570.

A court's skepticism about whether the alleged conduct had actually occurred does not justify dismissal of a complaint.  Alternatively, the *Twombly* Court instructed lower courts to ask whether the facts alleged in the complaint actually constitute actionable conduct.  *Twombly*, 550 U.S. 564-70 (holding that the legal plausibility standard mandated dismissal).

### III.  Discussion

Defendants premise their motion to dismiss on the following two claims:  (1) Carolina lacks standing to bring a legal malpractice claim, and (2) the statute of limitations as to Eddy and Stephens has expired, making time-barred the action against the individuals and Gallagher Sharp vicariously.

#### A.  Plaintiff Carolina has Standing

"An attorney is immune from liability to third persons arising from his performance as an attorney in good faith on behalf of, and with the knowledge of his client, *unless such third person is in privity with the client* or the attorney acts maliciously." *Scholler v. Scholler,* 10 Ohio St.3d 98, 98, 462 N.E.2d 158, 159-160 (1984) (emphasis added).  The Supreme Court of Ohio defines privity as "[t]he connection or relationship between two parties, each having a legally recognized interest in the same subject matter." *Shoemaker v. Gindlesberger,* 118 Ohio St.3d 226, 228, 887 N.E.2d 1167, 1170 (2008) (citing Black's Law Dictionary 8th ed. 2004).  In the context of legal

-7-

(1:10CV02492)

malpractice, "privity between a third person and the client exists where the client and the third person share a mutual or successive right of property or other interest." *CardioGrip Corp. v. Mueller and Smith, L.P.A.,* Case No. 2:06-CV-996 2008 WL 150000, at *5 (S.D.Ohio Jan. 14, 2008) (citing *Sayyah v. Cuttrell*, 142 Ohio App.3d 102, 111-12, 757 N.E.2d. 779 (2001). The interests of the client and the third party must be examined, "[p]rivity exists if the interest of the client is concurrent [*i.e.*, mutuality of interest] with the interest of the third person." *Sayyah*, 143 Ohio App.3d at 112.

### 1. Defendants Rely and Plaintiff's Distinguish the *Roetzel* Case

The *Roetzel* court found that the insurer was not in privity with the insured. *Swiss Reinsurance Am. Corp., v. Roetzel & Andress,* 163 Ohio App.3d 336, 346, 837 N.E.2d 1215, 1223 (Ohio App. 9 Dist., 2005). In *Roetzel*, a doctor was sued for malpractice and his liability insurer retained an attorney to represent him. *Id*. at 339. The attorney eventually urged both the insurance company and the doctor to settle the case. *Id*. at 339. While the doctor agreed to settle, the insurance company refused. *Id*. at 339. When the insurance company later tried to sue the attorney for legal malpractice, the court found that the insurance company and the doctor were not in privity because the insurer and the doctor's interests were in "clear conflict." *Id*. at 345-46.

Defendants' rely on *Roetzel* and argue that Plaintiff's complaint has failed to establish privity between Carolina and Goodman. ECF No. 24 at 12. Defendants allege that the third party must establish a mutuality of interests between themselves and the client in order to establish privity. ECF No. 24 at 12. Defendants further allege that Carolina has failed to establish a

(1:10CV02492)

mutuality of interest with Goodman.  ECF No. 24 at 12.

Carolina asserts that Defendants' interpretation of *Roetzel* is misguided.  ECF No. 15 at 6-7.  Carolina argues that in *Roetzel* there was an obvious conflict of interest between the insurer and the insured.  ECF No. 15 at 6-7.  Plaintiff purports that this is not the case here.  ECF No. 15 at 6-7.  Carolina consequentially argues that absent a clear conflict of interests, there is no burden to prove a mutuality of interests.

It is telling that the language in *Roetzel* does not state that the person alleging privity has the burden of proving a mutuality of interests.  The *Roetzel* court merely examined the facts of the case and found that a very drastic conflict of interests existed.  The court explained that the facts asserted in *Roetzel* manifest that no mutuality of interests existed between the parties because of the drastic conflict of interest.  *Swiss Reinsurance Am. Corp.,* 163 Ohio App.3d at 346. Here, in contrast to *Roetzel*, the docket reflects that there is no clear conflict of interest between Carolina and Goodman.  Absent a conflict of interest and coupled with inferential allegations asserting mutuality of interests, the facts convincingly suggest privity.

In accordance with the Rule 12(b)(6) standard, the Court finds that it is plausible that privity exists between Carolina and the Defendants.

## 2.  Defendants' Additional Arguments Lack Merit

Alternatively, Defendants allege two additional arguments in an attempt to show that Carolina was not in privity with Goodman.  First, Defendants contend that Carolina did not desire to have its interests protected by the 2005 High Low Agreement.  ECF No. 28 at 3. Defendants argue that because Carolina hired outside counsel to review the 2007 High Low

-9-

(1:10CV02492)

Agreement, Carolina was not seeking to have its interests protected by the 2005 high low

agreement or it would have hired outside counsel to review it as well.  ECF No. 28 at 3.  This

signifies, according to Defendants, that Carolina was uninterested in the parameters of the 2005

High Low Agreement.  ECF No. 28 at 3.  Second, Defendants allege that privity does not exist

because Defendants' counter-lawsuit against ENC on behalf of Goodman illustrates that

Defendants representation was clearly outside of Carolina's interest.  ECF No. 7-1 at 7.

These arguments lack merit.  Defendants' first argument–that Carolina did not want to

protect its own interests in the 2005 high low agreement because Carolina hired outside counsel

for the second high low agreement–is unfounded.  It is more likely that Carolina trusted the

Defendants' ability to draft a fairly straight forward High Low Agreement, and upon their failure

to do so, Carolina then retained outside counsel to examine the 2007 High Low Agreement.

Defendants' second argument–that Gallagher Sharp and Carolina did not have mutual

interests because Gallagher Sharp alleged counter-suit claims on behalf of Goodman–is also not

convincing.  The factual allegations sufficiently suggest that Carolina and Goodman's interests

were not at odds.  Privity does not equate to identical interests; rather, privity exists when the

interests of one adequately represents the interests of another.  *See Sayyah*, 142 Ohio App.3d at

112.  Defendants' second argument does not eliminate the possibility that a mutuality of interests

existed between Carolina and Goodman.

**B.  The Tolling Agreement is Enforceable Against Robert Eddy and Alton Stephens**

Ohio Revised Code §1775.08 governs the enforceability of the Tolling Agreement.  The

applicable statute, since repealed, governed agency law of partnerships at the time of the Tolling

(1:10CV02492)

Agreement's creation.  Ohio Revised Code § 1775.08 states, in pertinent part:

> Every partner is an agent of the partnership for purposes of its business, and the
> act of every partner, including the execution in the partnership name of any
> instrument, for apparently carrying on in the usual way the business of the
> partnership of which he is a member binds the partnership, unless the partner so
> acting has is fact no authority to act for the partnership in particular matter, and
> the person with whom he is dealing has knowledge of the fact that he has no such
> authority.

Section 1775.08 outlines several actions that a partner cannot do without express permission of

the other partners.  Only the Ohio Revised Code 1775.08(C)(3) is at issue here, that being a

restriction on a partner to "confess a judgment" on the behalf of another partner or the

partnership.

In addition to enforceability, the Court must also determine who is bound by the Tolling

Agreement and to what extent.

### 1. Gallagher Sharp had Authority to Bind Attorneys Eddy and Stephens

Defendants allege that Gallagher Sharp had no authority to bind individual partners to the

Tolling Agreement.  Gallagher Sharp's Managing Partner, Allen Petrov, signed the Tolling

Agreement on behalf of Gallagher Sharp.  ECF No 11 at 3.  Section 1775.08 of the Ohio Revised

Code states that unless granted authority by their partners, no partner may "confess a judgment"

on behalf of another partner.  In reliance upon this language, Defendants argue that if another

partner cannot confess a judgment on behalf of another partner, it rationally follows that another

partner cannot waive affirmative defenses, such as statute of limitations.  ECF No. 24 at 3-6.

Defendants also, however, cite the portion of Ohio Revised Code 1775.08(A), stating that

actions by a partner during the normal course of business binds the "partnership."  ECF No. 24 at

-11-

(1:10CV02492)

8. Lastly, Defendants allege that the term "partnership" in the statute applies only to the business entity, not its individual partners.  ECF No. 24 at 7-8; *see Nat'l. Union Fire Ins. Co. of Pittsburgh, PA v. Wuerth,* 122 Ohio St.3d 594, 597, 598 (2009) (holding a law firm was not liable for the malpractice of its attorneys as the statute of limitations on the individual attorneys had expired; and a law partnership is a business entity that does not specifically practice law and therefore cannot itself commit malpractice).

Carolina  unbraids  Defendants' interpretation of the Ohio Revised Code § 1775. Carolina alleges that Ohio Revised Code 1775.08(A) does not prevent Gallagher Sharp from binding its individual partners *via* a tolling agreement.  ECF No. 26 at 2.  Carolina argues that the restriction on "confessing a judgment" does not imply a restriction on tolling affirmative defenses.  ECF No. 26 at 2.  Carolina emphasizes that "tolling" and "waiving" are distinct.  ECF No. 26 at 3.

The Court finds that Gallagher Sharp, through the law firm's managing partner, had authority to toll Eddy and Stephens' claims and defenses.  The partnership allows individual partners to bind other individual partners to contracts and agreements.  According to Ohio's jurisprudence, "each member of a partnership acting within the scope of the business of the partnership acts for all and is bound by the acts of all."  *See* 13 Ohio Jur. 3d Business Relationships § 1138.  As a managing partner, Allen Petrov acted within the normal course of business when acting as a signator to the Tolling Agreement.  The Tolling Agreement clearly

-12-

(1:10CV02492)

contains a clause stating that the authority to bind Gallagher Sharp and, therefore, its partners.[4]

ECF No. 11 at 3.

Ohio jurisprudence also provides, in its definition of a partnership that, "every partner is an agent of the partnership for the purpose of its business and the agency of the parties for each other; that is, a mutual agency in which each partner is a principal of and agent for the other, has to be held an essential element of the partnership relation." 6 Ohio Jur. Pl. & Pr. Forms § 54:64 (2009). In other words, individual partners can be bound by the acts of other individual partners, including the general partner of the law firm. Defendants' allegation that a "partnership" only binds the business entity is semantic gymnastics.

**2. The Language of the Tolling Agreement Binds Eddy and Stephens**

Defendants argue that Eddy and Stephens as individual attorneys were not bound by the Tolling Agreement. Defendants argue that the Tolling Agreement was meant to only bind the "parties," and, in support, cite to the following Tolling Agreement language:

> This Confidential Tolling Agreement (this 'Agreement') is entered into by and among Miller Goler Faeges LLP (the 'Miller Firm') (the Miller Firm was formerly know as Goodman Weiss Miller LLP and is sometimes herein referred to as the 'Goodman Firm'), Carolina Casualty Insurance Company ('Carolina Casualty') and Gallagher Sharp (the 'Gallagher Firm') (hereinafter collectively 'the Parties') on December 20, 2007.

ECF No. 11 at 1. Contrary to Carolina's argument, Defendants claim, the "party" is Gallagher Sharp, not the individual attorneys Eddy and Stephens. ECF No. 24 at 2-3. Managing Partner

---

[4] The tolling agreement states: "Each of the Parties expressly warrants and represents that the undersigned has full authority to sign this Agreement on its behalf and is authorized to bind it hereto." ECF No 11 at 2.

(1:10CV02492)

Allen Petrov is the only person from Gallagher Sharp to physically signed the document.  ECF No. 11 at 3.  Because Eddy and Stephens did not sign the Tolling Agreement, they are not "parties" to it, and, therefore, Defendants argue, the statute of limitations for legal malpractice has expired.[5]

In opposition, Carolina argues that Eddy and Stephens are bound.  Carolina highlights the following two clauses in the Tolling Agreement:  (1) "Each of the parties expressly warrants and represents that the undersigned has full authority to sign this agreement on its behalf and is authorized to bind it hereto" (ECF No. 11 at 2) and (2) "[E]ach of the parties agrees and acknowledges that this Agreement and the contents hereunder is binding and adheres to the Party . . . and shall be binding on all . . . partners . . . employees . . . attorneys . . . of any of the Parties hereto in any capacity including past, present, future or otherwise, and all others with liabilities derivative of them or rights though them."  ECF No. 11 at 2.  Carolina urges that these two clauses  bind the individual "partners" and "attorneys" within Gallagher Sharp, such as Eddy and Stephens.  ECF No. 15 at 9-10.

The Court finds that it is facially plausible that Attorneys Eddy and Stephens are bound by the Tolling Agreement.  The Tolling Agreement's language explicitly includes "partners" and

---

[5]  Defendants also petitioned the court to supplement their motion with a recent, non-binding, Cuyahoga Court of Common Pleas case involving a law firm entering into a tolling agreement binding its partners.  The facts of that case are not analogous to our own as there is nothing to suggest that tolling agreement contained the same specific language then the one at issue here.  The Court also does not reach the same conclusions drawn by the Common Pleas Court when analyzing the _Benjamin v. Pipoly_, 155 Ohio App. 3d 171 (Ohio App. 10 Dist., 2003), and _Covington v. Lucia_, 151 Ohio App. 3d 409 (Ohio App. 10 Dist., 2003) cases, which they almost wholly relied on in rendering their verdict.

(1:10CV02492)

"attorneys" of Gallagher Sharp (a party to the agreement).  Therefore, the factual allegations in the complaint are "enough to raise a right to relief above the speculative level."  *Twombly*, 550 U.S. at 555.  Defendants' motion to dismiss is not well taken.

### IV.  Conclusion

By asserting facts that convincingly suggest actionable conduct and jurisdiction, Plaintiff Carolina Casualty Insurance's complaint crosses the plausibility threshold.  Accordingly, Defendants' motion to dismiss is denied.

IT IS SO ORDERED.


September 30, 2011                                  */s/ Benita Y. Pearson*
Date                                                          Benita Y. Pearson
                                                                  United States District Judge